SALMON et al. v. HELENA BOX CO.

(Circuit Court of Appeals, Eighth Circuit. November 20, 1907.)

No. 2,572.

1. EVIDENCE—RELEVANCY—ACTION FOR BREACH OF CONTRACT.

Where a contract in suit, which was for the sale and purchase of lumber, was clear and explicit in its terms, evidence as to the nonperformance by plaintiff of a previous contract between the parties, not in suit, was properly excluded as irrelevant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 388–415.]

2. LOGS AND LOGGING—SALE OF LUMBER—EVIDENCE TO EXPLAIN TERMS USED IN CONTRACT—USAGES OF TRADE.

In an action on a contract, by which plaintiff agreed to deliver as ordered by defendants for a stated price lumber of the width of "10" and up," where a question at issue was as to whether defendants were justified in giving orders for lumber limited to certain widths above 10 inches, it was not error to admit evidence showing the meaning of the phrase "10" and up" as used in the lumber trade, and that it was more expensive in view of the local practice in stacking lumber at the mills to fill orders for special widths than for widths as they ran.

3. SAME—PERFORMANCE OF CONTRACT—PARTY IN DEFAULT.

Under a contract by which plaintiff agreed to ship lumber to defendants as ordered, not less than a certain quantity each month if requested, it was the duty of defendants to take the first step in performance by giving the necessary shipping orders within a reasonable time, and until such orders were given plaintiff was in no default nor under any duty to tender shipments.

4. TRIAL—INSTRUCTIONS.

Abstract propositions of law in instructions, when not pertinent and necessary to the case as made, tend rather to confuse than aid the jury, and it is the better practice to reduce the issue of fact to as limited a compass as is consistent with full instruction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 582–586.]

5. SALE—BREACH OF CONTRACT—MEASURE OF DAMAGES.

In an action to recover damages for the refusal of defendants to order and take lumber under a contract of sale, where there was proof of the market value of the lumber at the time and place of delivery, the jury were correctly instructed that, if plaintiff was entitled to recover, the measure of damages was the difference between such value and the contract price of the lumber, and it was not error to refuse further instructions on the subject.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Morris M. Cohn and Charles J. McDermott, for plaintiff in error.

John I. Moore, U. M. Rose, W. E. Hemingway, G. B. Rose, D. H. Cantrell, and J. F. Loughborough, for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. This case has been here before. 147 Fed. 408, 77 C. C. A. 586. To the opinion then rendered reference is made for the terms of the contract in question and other facts essential to a

full understanding of the case. For the present purposes it needs only be stated that the box company sued Salmon and others on three counts: (1) For damages for failure to accept lumber according to the requirements of a contract dated April 28, 1903, whereby defendants purchased and agreed to take from plaintiff 1,000,000 feet of lumber; (2) for damages in the sum of $14,000 for failure to accept lumber according to the requirements of a contract dated January 14, 1904, whereby defendants purchased and agreed to take from plaintiff 5,000,-000 feet of lumber; (3) for money due and owing to plaintiff for lumber actually accepted by defendants amounting to $2,187.77. The case was tried, resulted in a judgment in favor of plaintiff for $8,603.74, was brought here for review, reversed and remanded, tried a second time with similar result as before, and is now brought here by writ of error for another review. At the second trial plaintiff dismissed as to the first count, agreed with the defendants upon the amount due on the third, and litigated the second only. The defense consisted of a denial that defendants had failed to accept lumber according to the contract, and an affirmative plea that plaintiff first broke the contract by refusing to deliver lumber as required, and that defendants were damaged thereby in the sum of $10,000, which they sought to recover by way of counterclaim. The contract in question was for the purchase by defendants from plaintiff of specified quantities and kinds of lumber at prices fixed for each kind, and contained a stipulation that deliveries should be made from time to time according to shipping instructions to be given by the vendees.

Whatever may have been the evidence on the main issue, as to which party first broke the contract, there was no substantial evidence showing that defendants sustained any loss by reason of plaintiff's assumed failure to make deliveries of lumber. The market value became lower instead of higher. Moreover, the finding of the jury that plaintiff was damaged by the failure of defendants to accept the lumber is inconsistent with the claim that the defendants were damaged by plaintiff's failure to deliver. Because of the failure to show that defendants would have suffered some loss if they had been required to go into the market and purchase lumber, wrongfully withheld by plaintiff, the trial court instructed the jury that defendants could not recover on their counterclaim. In this there was obviously no error.

The only issue of fact left for consideration was whether defendants broke the contract of 1904 by failing to give shipping instructions as required, or whether plaintiff broke it by failing to deliver lumber as ordered by defendants. In other words, the only issue left was, which party, if either, first made a breach of the contract. Most of the assignments of error relate to the ruling of the court on the admission of evidence, and these will first be considered. Defendants offered testimony tending to show delays by plaintiff in filling orders for lumber made under the contract of April, 1903. Plaintiff objected to that evidence on the ground that it had dismissed the cause of action based on that contract, and that evidence showing how plaintiff failed to perform it could have no bearing on the issues in question with respect to the separate contract of January, 1904. This objection was sustained. The contract of 1904 was clear and explicit, without ambiguity or

uncertainty with respect to the mutual obligations of the parties. That was settled on the former appeal. Each of the two contracts had distinct and separate subjects-matter, and the attempt to tack the contract of 1904 upon that of 1903 as one of a series of transactions initiated in 1903, and to subject the former to the infirmities of the latter or to any equitable or legal defense growing out of it, was unwarranted. The trial judge so ruled, and there was no error in doing so. This conclusion eliminates many of the questions brought to our attention by the assignment of errors, and renders unnecessary any particular reference to them.

Defendants contend that the trial court erred in permitting the plaintiff's witness to testify concerning the meaning of the words employed in the contract "10" and up" when used in the lumber trade. The order as made by defendants and accepted by plaintiff was in part as follows: "You may enter our order for the following cottonwood lumber * * * 1,500,000 1", 10" and up, 1s and 2s," etc. These figures and words are obviously abbreviations and susceptible of explanation by persons familiar with the business in connection with which they were employed. There was no error in permitting the explanation. The testimony was material in the light of the respective claims of the parties. The issue before the jury was whether the defendants wrongfully refused to give shipping instructions for the lumber, or whether plaintiff wrongfully refused to deliver lumber after such instructions had been given by defendants. The plaintiff claims that defendant ordered special widths not justified by the contract, of 14 to 15 and 16 to 18 inches in width, and insisted that orders should be filled with those widths exclusively, irrespective of the widths prescribed by contract, namely, 10 inches or above; that defendants had ordered lumber not according to the requirements of the contract, and irrespective of the latitude permitted them by the contract, so as to apparently put plaintiff in default if it failed to fill such orders. Plaintiff admitted its liability to deliver lumber within the range of widths prescribed by the contract according to shipping instructions to be given by the defendants, and, so far as the proof shows, was always ready and willing to do so; but denied that defendants could limit that range; and claimed that their orders making such limitation constituted unwarranted and substantial departures from the contract. It was in view of these claims that the court permitted plaintiff's witnesses, over defendants' objection and exception, to testify concerning the practice of the mills in Helena, Ark., in stacking lumber, and also to testify that it was more expensive to fill orders with the special widths than with the widths as they came from the ordinary run of the mill, as stacked. In view of the issue before the court, we think there was no error in admitting the testimony referred to.

Some exceptions were taken by defendants to the ruling of the court excluding testimony concerning the prices obtained by plaintiff for lumber as shown by its sales book. In the light of the proof that there was a market value for the lumber in question at Helena, Ark., all that evidence was properly excluded. The trial court proceeded according to the law declared by us on the former appeal concerning the measure of damages; holding that it was the difference between the

market price at the time and place of delivery and the price as fixed by the contract.

Much correspondence between the parties, and other evidence tending to justify their conduct respectively, was offered in evidence. To some of this defendants objected, and the action of the court in ruling against them has been assigned for error. We do not deem it necessary to pass separately upon these assignments. After a patient examination of the record in view of the latitude of inquiry proper on the issue as made by the parties we are unable to discover in them any prejudicial error.

It is objected that the court erred in refusing to give certain instructions to the jury requested by defendants. They requested the court to charge as follows:

"(1) The plaintiff who sues upon a contract has not launched his case until he has shown that he has tendered the thing which has been contracted for, and if he is unable to show that, he cannot claim any damages for the non-fulfillment of the contract. (2) Before the plaintiff can recover upon the contract of January 14, 1904, it must show that it in all things complied with the same, in the fulfillment of orders sent to it by defendants, and that it tendered to the defendants the lumber called for by the contracts, in the proper proportion respecting the different dimensions called for therein, at the times when it had a right to tender the same."

The learned trial judge instead of giving the requested instructions charged the jury as follows:

"There is nothing said in the contract as to when the shipping instructions were to be sent by the defendants to the plaintiff; but the law implies when a contract of that kind is entered into, whereby one party agrees to sell and obligates himself to ship a certain amount every month if requested, and it is silent as to when the other party should give the directions to ship, that the party will be expected to give shipping instructions or make his purchase within a reasonable time. * * * The seller was required to have sufficient lumber on hand for shipping purposes so as to fill at least forty car loads a month if ordered. * * * The law does not expect the plaintiff, after entering into a contract like this, to stack up five million feet of lumber and keep it there for an indefinite time until the defendants can find a profitable market; but, on the other hand, the law does not expect, in view of the fact that the contract provides that they shall await shipping instructions, that the defendants must take it out immediately, or that they must order every month between forty and fifty cars."

We held on the former appeal, in effect, that the present contract was dependent and mutual; that it obligated the defendants to give shipping instructions within a reasonable time, and obligated the plaintiff within a like reasonable time thereafter to make the shipments accordingly. It was the duty of the defendants to take the first step in the performance of this executory contract. If they refused or failed to do so by giving the required shipping instructions within a reasonable time they were in default, and thereby discharged plaintiff from its obligation to perform, which was dependent upon defendants taking the initiative. The contract was executory, and the obligations of the parties were mutually dependent. Canal Co. v. Gordon, 6 Wall. 561, 569, 18 L. Ed. 894; Hinckley v. Pittsburgh Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; The Eliza Lines, 199 U. S. 119, 26 Sup. Ct. 8, 50 L. Ed. 115; Washington County v.

Williams, 111 Fed. 801, 49 C. C. A. 621. The plaintiff's obligation arose only upon the defendants giving the necessary shipping instructions, and it was in no default until those instructions were given. In the absence of such instructions no obligation to tender lumber to the defendants arose. Hinckley v. Pittsburgh Steel Co., supra. The requested instructions were not applicable to the case before the court, and were properly refused.

The failure to give other instructions requested by defendants is also complained of as error. Some of these declare that the mere assertion of a purpose not to perform by defendants at some indefinite time in the future in the absence of an unequivocal present refusal to do so would not constitute a breach of contract; that the contract could not be abandoned by defendants prior to the expiration of the time for its complete execution unless the defendants refused to perform; that under certain assumed conditions plaintiff would be estopped from asserting that defendants had broken the contract; that plaintiff might under certain circumstances be entitled to recover for any additional expenses incurred by it, by reason of defendants ordering widths not contemplated by the contract. These and other like declarations were perhaps well enough as abstract propositions of law (as to this we express no opinion); but they had no place in this case. The jury was fully instructed without them. The issue was very simple, namely, which party, plaintiff or defendants, first broke the contract? The result depended exclusively upon the answer to this one question. The learned trial judge in his charge left nothing uncertain on this issue. The charge was full and explicit, to the effect that if defendants failed to give shipping instructions warranted by the contract within a reasonable time it thereby made such a breach of the contract that plaintiff could recover, but if plaintiff failed to comply with proper shipping instructions and to fill defendants' orders within a reasonable time after receiving them then plaintiff could not recover. He appropriately confined the attention of the jury to a consideration of this one question. Abstract propositions of law, when not pertinent and necessary to the case as made, tend rather to confuse than aid a jury in its deliberations. It is better practice to do as was done here—reduce the issue of fact to as limited a compass as is consistent with full instruction to the jury. In this way the most intelligent verdicts are likely to be secured.

The court also refused to give an instruction in the language as requested by defendants' counsel concerning the measure of damages. This was not error if it gave, in its own language, the correct instruction on that subject. The court told the jury, in effect that, if plaintiff was entitled to recover at all it should recover the difference between the contract price and the market value of the lumber at the time and place of delivery. The proof at the second trial differed from that at the first in this: that it was made to appear that there was a market for the lumber in question at Helena, Ark.—the place of delivery. The rule as given to the jury, just stated, was the true and exhaustive rule, and nothing more need have been said on the subject; but in view of the fact that plaintiff had actually sold its lumber before suit was brought, the court further told the jury that

the duty rested on plaintiff to exercise reasonable diligence in securing the best price the market afforded. Of this the defendants could not complain. It gave them all they were entitled to.

Some other less important questions, called to our attention by the assignment of errors, have been carefully considered. The case has been twice tried, and the dominant and meritorious issue of fact has been twice found in favor of the plaintiff. In view of this fact, hypercritical attacks upon the proceedings below should not be encouraged. Finding no reversible error, the judgment is affirmed.