## ROBERT GRACE CONTRACTING CO. v. CHESAPEAKE & O. N. RY. CO.

(Circuit Court of Appeals, Sixth Circuit. July 21, 1922.)

No. 3656.

1. **Contracts ☞127(2)—Engineer's decision can be made conclusive only as to questions involving construction.**

A provision of a contract for the grading of a railroad, providing that the decision of the railroad's engineer on all controversies will be conclusive on both parties, is invalid, as ousting courts of jurisdiction, unless it can be limited to questions as to the manner of construction, and, if so limited, it does not prevent recovery in a contractor's action for failure to provide the right of way on which the work was to be done.

2. **Contracts ☞299(2)—Provision empowering engineer to direct order of work no defense to action for delay in furnishing place of performance.**

A provision of a contract for the grading of a railroad, providing that the railroad's engineer shall have power to direct the order of performance, does not prevent recovery for delay in furnishing a right of way, unless the delay is only such as may be assumed would have occurred under directions of the engineer, if the whole right of way had been available.

3. **Contracts ☞287(1)—Plaintiff's failure to secure engineer's certificates no defense to action for delay in furnishing place of performance.**

Failure to secure engineer's final estimates and certificates, as required by the contract, does not prevent contractors for the grading of a railroad from recovering for failure to provide the right of way in due time.

4. **Contracts ☞299(2)—Provision allowing additional time for performance, if delayed by defendant, held not to prevent recovery for such delay.**

A provision, in a contract for the grading of a railroad, giving contractors additional time for performance, if delayed by railroad company, does not prevent recovery for delay in furnishing the right of way.

5. **Contracts ☞284(4)—Provision authorizing engineer to decide disputes relating to execution of work held to prevent recovery for damages resulting from furnishing unsuitable material and working conditions.**

A provision in a contract for the grading of a railroad, authorizing the engineer to decide questions arising between the parties as to the execution of the work, *held* to prevent recovery for damages resulting from the furnishing of unsuitable material and the diversion of water course.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Action at law by the Robert Grace Contracting Company against the Chesapeake & Ohio Northern Railway Company. Judgment of dismissal, and plaintiff brings error. Reversed and remanded for a new trial.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

William Watson Smith, of Pittsburgh, Pa., and Frank F. Dinsmore, of Cincinnati, Ohio (Dinsmore, Shohl & Sawyer and Shaffer '& Williams, all of Cincinnati, Ohio, and Gordon & Smith, of Pittsburgh, Pa., on the brief), for plaintiff in error.

Henry Bannon, of Portsmouth, Ohio, and Fred C. Rector, of Columbus, Ohio (Le Wright Browning, of Maysville, Ky., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Plaintiff in error, being engaged in the business of excavating and grading, entered into a construction contract with the defendant in error for the grading of about nine miles of new railroad. Eventually the work was finished and accepted, and the amount admitted to be due was paid. The contractor brought this action in the court below, seeking to recover the damages caused by three alleged breaches of the contract. The first was for failure to furnish the contractor with the place to do the work as agreed; the second, that the contractor was required to use unsuitable material in making fills; and the third, that the incidental diversion of a water course was required to be made upon such an unskillful plan as caused injury to the contractor. When the issues were complete by petition, amended petition, and demurrer, the trial court sustained the demurrer and dismissed the petition. The contractor now seeks to have this action reviewed and reversed.

For the purposes now involved, it has not been doubted that the petition states a good cause of action as to each of the three elements of damage, save for those provisions of the contract which gave the defendant's chief engineer large power of directing how the work should be done and certifying the amount earned, thus making him in many respects an arbitrator; and it is the validity and effect of these provisions which must control the disposition of the case. Sections 25 and 26 of the contract are given in the margin.[1]

[1] We consider first section 26. It is admitted that, if this section may have literal effect, this action cannot be maintained. The attack upon the section is by reason of its universality, and the contractor appeals to the rule declaring invalid an arbitration contract, which, in advance of any dispute, provides for vesting an arbitrator with the exclusive right to decide all questions that may arise between the parties on the subject-matter, thereby ousting the courts from all power to hear and decide those questions. Insurance Co. v. Morse, 87 U. S. (20 Wall.) 445, 22 L. Ed. 365. On the other hand, it is thought, by deductions from our opinion in Memphis Co. v. Brown-Ketchum Co., 166

[1] "25. *Power of Engineer.* The engineer shall have power to reject or condemn all work or material which does not conform to this contract; to direct the application of forces to any portion of the work which, in his judgment requires it; to order the force increased or diminished; and to decide questions which arise between the parties relative to the execution of the work."

"26. *Adjustment of Dispute.* All questions or controversies which may arise between the contractor and the company, under or in reference to this contract, shall be subject to the decision of the chief engineer, and his decision shall be final and conclusive upon both parties."

Fed. 398, 93 C. C. A. 162, that such rule does not invalidate a contract like section 26, when applied to construction work and to decisions by a technical expert.

We will not undertake to decide whether section 26 can be limited so as not to apply to fundamental questions of law or fact, not arising in the course of the execution of the contract, but which pertain to a refusal to perform initial obligations. However that may be, and without making here any review of the decisions, we have become satisfied that, unless it can be so limited, it is invalid, and that, if it is so restricted, it does not reach a cause of action for failure to provide the right of way upon which the work can be done. In either case it forms no bar to the prosecution of a suit at law for the damage resulting from the first alleged breach of contract.

More in detail, the case made by the declaration upon this subject is to the effect that the road to be graded was about 11 miles long; that by the contract "the company shall provide lands upon which the work under this contract is to be done"; that the contractor was required to proceed with the utmost diligence; that, in order for the work to proceed as was required, it was necessary to have the right of way not only where cutting was to be done, but also where a fill was to be made, and also over the intervening space; that, although the contract was made in May, 1915, and to be completed by August, 1916, yet, because the defendant delayed in furnishing the right of way, the completion of the work was delayed for about one year, and the plaintiff was damaged by reason of its equipment standing idle and expense caused in various specified ways; and that the obtaining of much of the essential right of way was delayed until the summer and fall of 1915, thus throwing the work into the winter, and that some of it was delayed until 1916 and even 1917.

It is plaintiff's theory that the defendant's legal duty under the contract was to provide the right of way just as rapidly and completely as necessary to meet the contractor's reasonable plans to expedite the work and to do it economically; it is defendant's theory that the contractor must accept, as part of the situation, such delay as was reasonably incident to acquiring the right of way by negotiation or by legal proceeding. Whatever might be the case, if the contractor knew that the right of way was not definitely obtained or contracted for, we find that the declaration here alleges that the contractor supposed the right of way was available to the railroad, ready for use, and had no reason to understand that there would be delay on that account. When the question arises upon demurrer to such a declaration, we think the plaintiff's theory, above stated, must be adopted, and that cause of action for the resulting damages thus arose.

It is clear to us that such a controversy cannot be distinguished in principle from one where the railroad or contractor might wholly refuse to proceed with, or even to begin the performance of, the contract, and that one of the latter kind would not come within the purview of an arbitration agreement of this character.

[2] The result is not to be escaped by the contract provision which gives the engineer power to direct the order in which the work should

be performed. It would be an unreasonable construction of this provision to say that he could require the earlier performance of that part of the work which would naturally and reasonably be the last part, and do so for the sole reason that the company had, without good cause, neglected or refused to furnish the right of way where the first work should have been done. If it shall appear that the delay in furnishing the right of way caused only such damages as would have come from those directions as to the order of the work which it may be assumed the engineer would have given if the whole right of way had been available, then another question will be presented—one which must be considered and decided at the trial.

[3, 4] Nor can the result be escaped by the contract provisions regarding final estimate by the engineer, and liability to pay only after his final certificate. There can be no supposition that estimates and certificates, preliminary or final, were intended to cover a subject-matter not confided to the judgment and decision of the engineer, and hence those provisions cannot cover the existence of a liability caused by the failure to provide the right of way in due time. Nor will the extension of time which the engineer was to allow where there was delay by the railway company, and which was in fact given, serve to defeat, necessarily, all recovery claimed in the right of way branch of the case. It cannot be inferred that delay which threw the work over into the war period and enormously increased the cost of performance was intended to be neutralized merely by a corresponding extension of time.

[5] It is not denied that section 25 is valid, and we think it operates to prevent any recovery in this suit on account of unsuitable material for filling or on account of the diversion of the water course. Both of these are clearly "questions which arise between the parties relative to the execution of the work." It is the plain implication from the petition that these questions were decided by the engineer as they respectively arose, and that estimates have been given and payments have been made for the work done by the contractor pursuant to these decisions. Any right to claim damages because these decisions were wrongful is inconsistent with the contract.

So far as the judgment denied any right to recovery on account of the damages claimed for failure to furnish the right of way, it was erroneous; but the conclusions of the trial court are affirmed as to the second and third alleged breaches.

Accordingly, the judgment is reversed, and the case remanded for a new trial.