### KENNEDY et al. v. CITY OF WHITE BEAR LAKE.

No. 8545.

Circuit Court of Appeals, Eighth Circuit.

Feb. 18, 1930.

See also 22 F.(2d) 862.

L. E. Melrin, of Minneapolis, Minn. (John R. Ware and P. F. Sherman, both of Minneapolis, Minn., and M. J. Doherty and W. E. Rumble, both of St. Paul, Minn., on the brief), for appellants.

J. F. Cowern, of St. Paul, Minn. (John Christopherson, of St. Paul, Minn., on the brief), for appellee.

Before STONE, Circuit Judge, and MUNGER and REEVES, District Judges.

REEVES, District Judge.

Appellants were plaintiffs and the appellee was defendant in the trial court. These designations will be used in this opinion.

Plaintiffs seek the rescission of a contract for the construction of a sewerage system for defendant.

In July, 1926, the plaintiff Kennedy, with the corporate plaintiff as surety, entered into said contract with the defendant city. It was provided, among other things, that if quicksand should be encountered in making excavations for said system, the same should either be removed as extra work, or that a special allowance should be made to cover the actual cost of labor and supplies, plus 15 per cent. for overhead expenses.

Quicksand was defined in the contract as consisting "of material in place, so saturated that cohesion is practically destroyed, which acts as a fluid and not as a granular or plastic mass, and is so retentive of its moisture that it cannot be drained without causing the material to flow. Such material when uncovered will readily and under normal earth and water pressure rise in the bottom of the trench."

Very similar material, with like characteristics, was specifically withheld from a classification as quicksand as follows: "Wet material converted to a fluid or semi-fluid consistency by operations of workmen will not be classified as quicksand, but must be cared for as provided under paragraphs Nos. 8 and 9, Division II of the specifications."

Claiming that quicksand had been encountered in the progress of the work, the contractor, Kennedy, and after his retirement the plaintiff surety, demanded that the same be so classified by the engineers and the extra compensation provided for in the contract allowed.

The defendant city declined to meet this demand, whereupon the plaintiffs instituted an action to rescind the contract upon the ground that same had been breached by the city. The plaintiffs seek other relief, such as compensation for the work done by them.

The trial court found that the material encountered was not quicksand, as defined in the contract, and denied recovery, but retained jurisdiction to determine the counterclaim interposed by the defendant city.

Plaintiffs have prosecuted their appeal upon the ground that the trial court in effect found that the material encountered was quicksand. Moreover, they assert that aside from the findings of the trial court, the evidence shows conclusively that the material was in fact quicksand.

Plaintiffs affirm furthermore that even if not quicksand, then the material encountered was without classification and this entitled the plaintiffs to extra compensation. Other facts will be stated, as they may become pertinent, in the course of the opinion.

1. The trial court found that the material in question "is ordinarily firm and can be walked upon without sinking"; that "the sand does not rise from the bottom" of the trench; and that: "The material in place did not rise in the bottom of the trench. After it was worked, it became soft. The water flowing under the ends of the sheeting brought into the trench some material, so that in the morning, before the commencement of the day's work, there was more material in the trench than when work ceased the night before."

The court carefully analyzed the contract definition of quicksand and affirmatively declared that said material possessed none of said qualities, and then expressed the following opinion: "My conclusion is that the sand was not quicksand within the definition contained in the specifications, but was the 'running sand' referred to in paragraph No. 9 of Division II."

Referring to the contract and particularly paragraph 9 of Division II, the following appears: "In case of running sand or other bad ground, the work shall proceed day and night if the Engineers so direct."

It was specially provided, as hereinbefore stated, that: "Wet material converted to a fluid or semi-fluid consistency by operations of workmen will not be classified as quicksand but must be cared for as provided under Paragraphs No. 8 and No. 9, Division II of the specifications."

The findings of fact made by the trial court in its opinion does not justify any inference that the material encountered was quicksand.

2. On the subject of the weight of the evidence, there was testimony on both sides of the question as to whether the material encountered was quicksand. Plaintiffs' evidence tended to show that said material should be so classified. On the contrary, the defendant called many witnesses, who were just as well qualified by experience and study, who testified that the material encountered was not quicksand.

The mayor of the city inspected the points where it was claimed quicksand was

present, and according to his observations the material had none of the qualities described in the contract as quicksand.

He testified as follows: "To me the material did not appear to boil up, nor run in to any extent that would prevent the laying of pipes. * * * To me the material appeared not to flow. * * * I observed that the men could stand at the bottom of the trench without sinking, and appeared to be standing on packed sand."

Another one of defendant's witnesses, who was qualified by experience and study, gave typical testimony as follows: "The sand did not boil up in the bottom of the trench. The men were standing in there shoveling it. The material that was shoveled out was ordinary sand."

Again, another witness for defendant testified: "The bottom of the trench was very solid. I watched them drain this trench. The material did not flow when they pumped the water out for the purpose of draining the trench. The nature of the material they were excavating in and on Murray Avenue was sand and sandy loam. * * * This material was not quicksand under the specification involved in this action. * * * They pumped the water out without the material flowing. The material, when they were working there, did not boil up in the bottom of the trench."

While it is true that in equity, on appeal, the facts, as well as the law, are open for consideration (Alexander v. Redmond [C. C. A.] 180 F. 92; Hyman v. Trow Directory Printing & Bookbinding Co. [C. C. A.] 261 F. 991), yet findings of fact, upon conflicting evidence taken orally, will rarely be set aside upon appeal (Foster Federal Practice, Vol. 4, Sixth Edition, Section 711c; Farmers' State Bank v. Freeman [C. C. A.] 249 F. 579; Fuller v. Reed [C. C. A.] 249 F. 158; Bijur Motor Lighting Co. v. Eclipse Machine Co. [C. C. A.] 243 F. 600; Brookheim v. Greenbaum [C. C. A.] 225 F. 763).

The evidence in this case fully justified the conclusions reached by the chancellor below.

This court, upon examination of the record, could not say that the weight of the evidence was contrary to such findings, but on the contrary fully supported same. Moreover, it was specifically provided in the contract that the work should not only be done under the supervision of the Pillsbury Engineering Company, but that said engineers "are to decide all questions as to compliance or non-compliance with the specifications of the contract."

The engineers refused to make the classification urged by the plaintiffs. This alone is conclusive. United States v. Gleason, 175 U. S. 588, 20 S. Ct. 228, 44 L. Ed. 284.

3. The contention that the material encountered, if not in fact quicksand, should have an independent classification, is untenable.

Class I of the specifications appears to comprehend all material such as sand, loam, clay, gravel, or mixtures of these materials. Quicksand was alone excluded therefrom.

Besides, it was plaintiffs' theory that the material encountered was quicksand and it sought relief wholly upon that ground. This point must be ruled against the plaintiffs.

The decree of the trial court was fully warranted upon the evidence in the case, and no reason appears why same should be reversed. Accordingly, said decree will be affirmed.