## McCULLOUGH et al. v. CLINCH–MITCHELL CONST. CO.
### No. 9810.

Circuit Court of Appeals, Eighth Circuit.
April 20, 1934.

Rehearing Denied May 22, 1934.

18

Company for the grading of a number of miles for new trackage. It made a subcontract with appellants for the doing of this work over a portion of this mileage. Under this contract appellants worked from July 1, 1929, until January 29, 1930, during which time a portion of the work covered by the subcontract was done. For several months before the latter date a difference had existed between the parties which culminated in appellants abandoning the work upon the latter date under the claim that appellee had breached the contract. Thereafter, appellee, acting under the provisions of the contract, went into the United States District Court and secured possession of the equipment and supplies (then on the work) of appellants and proceeded to complete the construction called for by appellants' contract. Thereafter, it filed a supplemental pleading for an accounting for the damages it claimed to have suffered through the failure of appellants to carry out their contract. Appellants answered and also stated a counterclaim for damages on account of the alleged breach of the contract by appellee. After an answer to the counterclaim, the case was referred to a master who made a careful and extended report embodying numerous findings of fact and several conclusions of law, the result of which was a determination against the counterclaim and in favor of appellee for $25,067.48 and costs. Exceptions to the report were overruled and a decree entered against appellants for the above sum. From that decree they appeal.

I. One matter presented here is the propriety of permitting the filing of the supplemental bill of complaint containing the claim for damages. We can find no exception in the record to this action of the court although the order granting leave shows a hearing and that appellants' counsel were present. Nor is there any objection to this action preserved in the amended answer and counterclaim filed thereto. The first appearance in the record of any challenge of this action of the court is in the assignment of errors on this appeal. It is obvious this point has been waived for lack of presentation to the trial court.

II. Another matter urged is directed to the point that vital error was committed in not determining that there could be no recovery by appellee and that there should be recovery by appellants because the contract provided for submission of disputes to the arbitration of the chief engineer of the railroad company; that such a dispute existed; that such arbitration was insisted upon by appellants but was denied and prevented by appel-

Montreville J. Brown, of St. Paul, Minn. (William H. Oppenheimer, of St. Paul, Minn., and Price Wickersham, of Kansas City, Mo., on the brief), for appellants.

E. H. McVey, of Kansas City, Mo. (Addison L. Gardner, Jr., of Chicago, Ill., and C. A. Randolph, of Kansas City, Mo., on the brief), for appellee.

Before STONE and SANBORN, Circuit Judges, and WYMAN, District Judge.

STONE, Circuit Judge.

Appellee had a general contract with the St. Paul & Kansas City Short Line Railroad

lee; that such denial constituted a breach of a material part of the contract; and that such breach justified appellants abandoning the work and recovering damages.

The subcontract expressly made part thereof the main contract between the appellee and the railway company. Both parties agree that the terms of the main contract are fully applicable to the subcontract. The dispute is concerning certain terms of such main contract and what was done thereunder. The contract provided for excavations and fills in accordance with the profile which was expressly stated to be approximate. The basis of both contracts was cubic yard payments grounded on differences of material handled. We are particularly concerned with two paragraphs of the contract which are as follows:

"9. It is mutually agreed that the plans, specifications, dimensions or location of the work covered by this agreement may be altered whenever the Chief Engineer considers such alteration necessary and expedient, but, unless such alteration shall have materially changed the character of the work, no extra compensation shall be allowed therefor. In case such alterations shall materially change the character of the work, before the commencement of the work covered thereby the parties hereto shall agree in writing as to the reduced or increased compensation to be made therefor. * * *

"35. It is mutually agreed that, to prevent all disputes and misunderstandings in relation to any stipulations contained in this agreement, or in reference to any of the specifications and plans made a part thereof or their performance by either of said parties, the Chief Engineer shall be, and he is hereby made, an umpire to decide all matters arising out of or growing out of this agreement, and the decision of the Chief Engineer on any point or matter touching this agreement shall be final and conclusive between the parties hereto, and each and every of said parties hereby waives any and all right of action, suit or suits, or other remedy, in law or otherwise, under this agreement or arising out of the same."

Shortly after appellants entered upon their work, the chief engineer, acting under the authority of paragraph 9 above, made a change by flattening a curve whereby appellants were required to excavate materially further into a hill. As soon as appellants discovered this change, they made claim to appellee that this alteration was one which would "materially change the character of the work," within the meaning of paragraph 9.

There was extended negotiation between the parties as to whether this alteration was such material change or not and as to whether the matter should be determined by the chief engineer. Appellee finally refused to recognize the alteration to be of that character and would not submit the matter to the arbitration of the chief engineer. Faced with this final determination of appellee, appellants gave notice that they regarded the refusal to submit the matter to the chief engineer as a breach of the contract and unless some satisfactory arrangement was made they would abandon the work on a definite date. Subsequent negotiations failed to alter this situation and work was abandoned on the indicated date. The contention here of appellants is that a dispute in relation to the agreement existed between the parties which they were not able to determine themselves and, therefore, should have been submitted to the chief engineer, under the provisions of paragraph 35, above.

The evidence leaves no question and the master finds that a dispute existed as to whether the alteration in line by the chief engineer did constitute a material change within the meaning of paragraph 9. It is equally clear that appellants repeatedly and without alteration of such position insisted upon the submission of this dispute to the chief engineer. It is also clear that, as a subcontractor, they had no standing to independently require the chief engineer to entertain such dispute and that they had been informed by appellee that the engineer would not entertain complaints from subcontractors. Also, it is clear that appellants repeatedly urged appellee to bring this dispute to the attention of and submit it to the chief engineer and that appellee refused to do so up to the time when the work was abandoned by appellants.

Neither party challenges the applicability of paragraph 35 to a bona fide dispute of this character. The position of appellee is that the paragraph is invalid as constituting a waiver of any rights to appeal to the courts and, therein, an ouster of judicial jurisdiction; that, if valid, such provision of the contract is independent and collateral and cannot be pleaded in bar; that, if valid, the provision was complied with by an informal submission to the chief engineer; that, if valid, such provision applies only to a bona fide dispute and that the contention made by appellants that this alteration of line by the chief engineer constituted a material change, within the meaning of paragraph 9, was not made in good faith.

### Validity of Arbitration Provision.

By validity, as here discussed, is meant the judicial recognition of the lawfulness of an arbitration agreement. The method of legal enforcement will be discussed under the next heading.

It can hardly be said that the decisions as to validity of provisions in contracts for arbitration of disputes between the parties thereto are in a very satisfactory condition. This unsatisfactory situation is brought about by opposing considerations. On one side are the judicial recognition of the desirability of parties settling their differences out of court; the danger of judicially remaking and enforcing a contract different from that to which the parties agreed by substituting the determination of a judge or a jury as to matters largely dependent upon expert qualifications for the determination of an expert agreed upon by the parties and who would have personal knowledge of all the matters bearing upon the dispute; and the practical utility and often necessity of such procedure in the case of construction contracts. On the other side is the supposed public policy that one cannot be held to an agreement restraining his resort to the courts to settle his justiciable rights. As to the encouragement of arbitration, it was long ago said that "as a mode of settling disputes, it should receive every encouragement from courts of equity." Burchell v. Marsh, 17 How. 344, 349, 15 L. Ed. 96. As to the dangers of remaking a contract, the Supreme Court has said "the contract did not contemplate that the opinion of the court should be substituted for that of the engineer" (Ripley v. United States, 223 U. S. 695, 704, 32 S. Ct. 352, 356, 56 L. Ed. 614); and, concerning a similar matter, "his action cannot, therefore, be subjected to the revisory power of the courts without doing violence to the plain words of the contract. Indeed, it is not at all certain that the government would have given its assent to any contract which did not confer upon one of its officers the authority in question" (Kihlberg v. United States, 97 U. S. 398, 401, 24 L. Ed. 1106). The same conception has been expressed by this court in a similar situation: "The courts cannot, without making a new contract for the parties, disregard such positive provisions, or set aside the action of the umpire, except for the most grave and cogent reasons." Choctaw & M. R. Co. v. Newton (C. C. A.) 140 F. 225, 233. As to the practical benefits of such provisions, the Supreme Court has said (regarding a contract for transportation of military stores):

"If the contract had not provided distinctly, and in advance of any services performed under it, for the ascertainment of distances upon which transportation was to be paid, disputes might have constantly arisen between the contractor and the government, resulting in vexatious and expensive and, to the contractor oftentimes, ruinous litigation" (Kihlberg v. United States, 97 U. S. 398, 401, 24 L. Ed. 1106) and this court (in a railroad construction contract, like here involved) said: "Such stipulations are evoked out of the experience of railroad companies in such construction work. From its very nature, extending over a long line of road, with diversified topography of country, encountering many varieties of geological formation, and difficulties impossible of anticipation, the variant views and notions of contractors and subcontractors respecting the infinite details of the work, the classification and measurement of material, the prevention of incessant wrangles over the work, with its annoyances and litigation, justified the railroad company in requiring, as a condition precedent to letting the construction of this work, the acceptance of the foregoing provisions of the contract" (Choctaw & M. R. Co. v. Newton (C. C. A.) 140 F. 225, 233). Also see Hardware Dealers' Mut. Fire Insurance Co. v. Glidden Co., 284 U. S. 151, 159, 52 S. Ct. 69, 76 L. Ed. 214. As examples of cases announcing the rule that agreements which oust the jurisdiction of the courts are invalid see Home Insurance Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365; Robert Grace Contracting Co. v. C. & O. N. R. Co., 281 F. 904, 905 (C. C. A. 6); Mitchell v. Dougherty, 90 F. 639 (C. C. A. 3); and see United States Asphalt Ref. Co. v. Trinidad Lake Petroleum Co., 222 F. 1006 (D. C. S. D. of N. Y.). The validity of arbitration or umpire provisions governing disputes arising in construction and similar contracts have been generally upheld. As said in United States v. Gleason, 175 U. S. 588, 602, 20 S. Ct. 228, 233, 44 L. Ed. 284, " * * * It is competent for parties to a contract, of the nature of the present one [construction contract], to make it a term of the contract that the decision of an engineer, or other officer, of all or specified matters of dispute that may arise during the execution of the work, shall be final and conclusive, and that, in the absence of fraud or of mistake so gross as to necessarily imply bad faith, such decision will not be subjected to the revisory power of the courts." The validity of such contract provisions has been steadily supported in the Supreme Court [United States v. Mason & Hanger Co., 260 U. S. 323, 326,

43 S. Ct. 128, 67 L. Ed. 286; Plumley v. United States, 226 U. S. 545, 548, 33 S. Ct. 139, 57 L. Ed. 342; Ripley v. United States, 223 U. S. 695, 701, 704, 750, 32 S. Ct. 352, 56 L. Ed. 614; Chicago, S. F. & C. Railroad Co. v. Price, 138 U. S. 185, 11 S. Ct. 290, 34 L. Ed. 917; Hamilton v. Liverpool & L. & G. Insurance Co., 136 U. S. 242, 256, 10 S. Ct. 945, 34 L. Ed. 419; Martinsburg & P. R. Co. v. March, 114 U. S. 549, 5 S. Ct. 1035, 29 L. Ed. 255; Kihlberg v. United States, 97 U. S. 398, 401, 402, 24 L. Ed. 1106; Humaston v. American Telegraph Co., 20 Wall. 20, 27–29, 22 L. Ed. 279; United States v. Robeson, 9 Pet. 319, 326, 327, 9 L. Ed. 142] and the Courts of Appeals [cases in this court, Kennedy v. City of White Bear Lake (C. C. A.) 39 F.(2d) 608, 610; Warner Const. Co. v. Louis Haussen's Sons (C. C. A.) 20 F. (2d) 483, 488; Road Improv. Dist. v. Roach (C. C. A.) 18 F.(2d) 755, 759; United States v. Geo. A. Fuller Co. (C. C. A.) 14 F.(2d) 813, 827; A. R. Young Const. Co. v. Road Improv. Dist. (C. C. A.) 297 F. 127, 137; Frisco Lumber Co. v. Hodge (C. C. A.) 218 F. 778, 780; United States v. Hurley (C. C. A.) 182 F. 776, 777; General Fireproofing Co. v. L. Wallace & Son (C. C. A.) 175 F. 650, 662; Cook v. Foley (C. C. A.) 152 F. 41, 51; Roberts, Johnson & Rand S. Co. v. Westinghouse El. & Mfg. Co. (C. C. A.) 143 F. 218; Choctaw & M. R. Co. v. Newton (C. C. A.) 140 F. 225, 235; Guild v. Andrews (C. C. A.) 137 F. 369, 371 (opinion by Judge Van Devanter); United States v. Bonness (C. C. A.) 125 F. 485, 489; Elliott v. Mo., K. & T. R. Co. (C. C. A.) 74 F. 707, 710]— also see opinion by Judge (afterwards Chief Justice) Taft in Mundy v. L. & N. R. Co., 67 F. 633, 637 (C. C. A. 6). Nearly all of the above citations involved construction contracts where various or all matters of dispute arising from performance thereunder were, by contract provision, determinable by an engineer or other designated person.

A distinction is made between executed (where an arbitration award has been made) and executory (where no award has been made) provisions, but this has to do with the remedy rather than the validity. Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 121, 44 S. Ct. 274, 68 L. Ed. 582.

Having the above law rules in mind, we examine the contract provision here to determine whether it is valid. Section 35 of this contract constitutes the chief engineer of the railroad company as "an umpire to decide all matters arising or growing out of this agreement." The declared purpose of this provision is "to prevent all disputes and misunderstandings in relation to any stipulations contained in this agreement, or in reference to any of the specifications and plans made a part thereof or their performance by either of said parties." The decision of the chief engineer is made "final and conclusive between the parties hereto, and each and every of said parties hereby waives any and all right of action, suit or suits, or other remedy, in law or otherwise, under this agreement, or arising out of the same." It is in the last just quoted provision we are interested. In so far as the waiver provision is concerned, it is ineffective to prevent judicial actions, whatever may be the effect of the provision or action taken under it upon such actions. It is thus ineffective because it seeks to deny the parties judicial remedies and, as such, is contrary to public policy. But this failure of the waiver clause does not necessarily mean that the entire arbitration provision is dragged down by the weight of that invalidity. It is the duty of the court to preserve as much of the contract as may properly survive. If the remainder of the provision is complete and it can be gathered that the parties intended it to operate irrespective of the waiver clause, then the balance of the provision should be preserved. It is obvious that the place of the waiver clause was purely to give added effect to the decision of the engineer. The provision for arbitration is complete without it. The expressed purpose of the provision is to care for disputes during the performance of the contract. Not only has this court (Choctaw & M. R. Co. v. Newton, 140 F. 225, 235) recognized the object of arbitration arrangements in this kind of contracts, but it is common knowledge that arbitration provisions of this character are almost universal in construction contracts to prevent the harassments, delays, and losses likely to result to some or all of the parties thereto arising from differences occurring during progress of the work. All construction contracts involve matters as to character of materials, of work, and of methods of doing the work. Determination of such is necessarily a matter of judgment and often the diverse interests of the parties cause difference of opinion with resulting disputes concerning them. It is to the interest of all parties that these disputes be promptly determined and by some one having special knowledge of such matters and who can act upon personal knowledge of the controlling facts. With this decided and well recognized usefulness, if not necessity, for such arrangements in construction contracts and with the

complete provision as to arbitration with the above waiver clause eliminated, we cannot believe that the parties here had in mind that arbitration would be undesirable if decisions thereunder did not bar legal remedies. The waiver was intended to add effectiveness to an award or decision but the declared purposes of the entire provision were made highly effectual without the waiver clause. We think the arbitration provision without the waiver clause is valid and should be upheld.

### Arbitration Provision as Plea in Bar.

While favoring arbitration as a means of settling disputes, the courts have been confronted with the practical problem of how to make arbitration effective where one of the parties refuses to abide by and perform an award or decision by an arbitrator or refuses to submit to arbitration some matter within the arbitration agreement.

Where an award has been made and the matter is how to make it effective, the law in the federal courts is as follows: Where there is national or state legislation providing for legal enforcement of an award, that will be done on the principle that such governs the remedy to enforce a recognized right. Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 44 S. Ct. 274, 68 L. Ed. 582. Where there is no such statute, the award will be given effect "in any appropriate proceeding at law, or in equity." Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 121, 44 S. Ct. 274, 276, 68 L. Ed. 582, and see Bayne v. Morris, 1 Wall. 97, 17 L. Ed. 495; Burchell v. Marsh, 17 How. 344, 15 L. Ed. 96; Karthaus v. Ferrer, 1 Pet. 222, 7 L. Ed. 121; Davy v. Faw, 7 Cranch, 171, 3 L. Ed. 305.

Where the arbitration agreement is executory, specific performance to compel arbitration has been denied. Red Cross Line v. Atlantic Fruit Co., supra, pages 120, 121 of 264 U. S., 44 S. Ct. 274. Such a breach will "support an action for damages" (Id., page 121 of 264 U. S., 44 S. Ct. 274, 276) and may be pleaded in bar where the arbitration was confined to furnishing essential evidence of specific facts and such form of evidence is a condition precedent to suit (Red Cross Line v. Atlantic Fruit Co., supra, page 121 of 264 U. S., 44 S. Ct. 274, and the cases above cited from the Supreme Court and this court upholding validity of arbitration provisions in construction contracts).

Here the refusal to arbitrate is pleaded by the defendants both in bar and as a counterclaim. The plea is that there were disputes as to certain work estimates (which involved the character of the material handled) and as to the alteration of the line ordered by the engineer being such as "materially changed the character of the work." Whatever may be said as to the controversy concerning the estimates, the contract expressly provided that, where an alteration by the engineer materially changed the character of the work, the parties should agree in writing as to the reduced or increased compensation therefor "before the commencement of the work covered thereby." Obviously, the agreement was that the compensation for the work on the changed part of the line was an express condition precedent to doing such work and where the parties could not agree as to such matter it is equally clear that a determination thereof by the prescribed method of arbitration was a condition precedent to going ahead therewith. It is also clear that this construction contract was a unit covering all of the work provided for therein. This situation where the arbitration relates to a dispute in a matter which the contract expressly provides shall be determined before the work is done seems to us to be a stronger one than where the arbitration is merely a condition precedent to bringing suit. When appellee refused performance by rejecting arbitration of this matter, it declined to perform a condition precedent to the further doing of the work by appellants. It placed appellants in the position where they had to choose between continuance of the work with a suit for damages at the end for this breach, waiver of the breach, or cessation of the work. They chose the last and were acting within their rights (see Choctaw & M. R. Co. v. Newton, 140 F. 225, 248, this court)—they did not lose their right to damages because they declined to proceed after this breach by appellee of this condition precedent (Choctaw & M. R. Co. v. Newton, 140 F. 225, 248, this court; The Eliza Lines, 199 U. S. 119, 128, 26 S. Ct. 8, 50 L. Ed. 115, 4 Ann. Cas. 406; Anvil Mining Co. v. Humble, 153 U. S. 540, 551, 552, 14 S. Ct. 876, 38 L. Ed. 814; Hinckley v. Pittsburgh B. Steel Co., 121 U. S. 264, 7 S. Ct. 875, 30 L. Ed. 967; Lovell v. St. Louis Mutual L. Ins. Co., 111 U. S. 264, 274, 4 S. Ct. 390, 28 L. Ed. 423; United States v. Behan, 110 U. S. 338, 344, 4 S. Ct. 81, 28 L. Ed. 168; Chicago v. Tilley, 103 U. S. 146, 154, 26 L. Ed. 371; Williams v. Bank of United States, 2 Pet. 96, 102, 7 L. Ed. 360; Salmon v. Helena Box Co. (C. C. A.) 158 F. 300, 303; see note to Valente v. Weinberg, 13 L. R. A. (N. S.) 448.

### Compliance With Arbitration Provision.

Appellee contends that, if the arbitration provision is valid and enforceable, it has substantially complied therewith. Search of the evidence reveals not only an entire failure to comply but a positive refusal to arbitrate.

### Good Faith of Dispute.

The issue as to the good faith of appellants was not before the court below and is not justified here by anything in the evidence or findings. The answer of appellee to the counterclaim contains no suggestion of this character, nor does either the report of the master, nor the decree, nor memorandum opinion of the court. Appellee contends that the master, in finding 15, determined this bad faith where he stated that the inclusion of the quantity of material to be "sidecast" without haul (caused by inclusion of materials for two road crossings) as made by appellants was "improper." A reading of that finding as well as others related thereto makes it very clear that the master did not use "improper" in the sense of consciously wrongful but purely in the sense of erroneous.

### Conclusion.

We think the initial breach by the appellee in its refusal to arbitrate the effect (under section 9 of the contract) of the change in line by the engineer gave appellants the legal right to refuse to proceed further with performance; that such breach is a bar to any action by appellee on account of such refusal; that appellants are entitled to recover, on their counterclaim, properly measured damages for such breach.

The decree is reversed and remanded for further proceedings in compliance herewith.