## In re GREENPOINT METALLIC BED CO., Inc.

### No. 38180.

District Court, E. D. New York.

March 4, 1940.

Samuel Rubin, of New York City, for petitioner, Nathaniel C. Ratner.

Delafield, Marsh, Porter & Hope, of New York City (Eugene Blanc, Jr., of New York City, of counsel), for debtor.

April & Eisenrod, of New York City, for creditors' committee.

BYERS, District Judge.

There are two matters before the court in this proceeding:

A. Motion for a stay of distribution by the clerk of the funds now on deposit to effectuate the terms of an arrangement, arising upon order to show cause dated February 20, 1940.

B. Hearing on petition for review of referee's determination filed February 20th, the certificate of the referee being dated February 17th.

The petitioner's status is that of a former employee of the debtor under a contract of hiring dated November 16, 1939, the term of which began November 1, 1939, and continued until December 31, 1940.

The debtor's petition for an arrangement under Chapter XI of the Chandler Act, 11 U.S.C.A. § 701 et seq., was filed on December 13, 1939, and was not accompanied by a statement of this executory contract; nor were there any other executory contracts called to the attention of the court by the debtor in accord with Section 324 of the Act.

The stay of distribution is sought in aid of the second motion, in connection with the certificate of review, and, while the two matters are interwoven, it is necessary to consider them separately, to the end that each may result in an appropriate order.

A. In connection with the application for a stay, it has been necessary to have recourse to the record made before the referee, in order to appraise the equities of the petitioner's position, for it appears that the referee has considered somewhat at length the general status of the petitioner in the proceeding, notwithstanding his failure to file a proof of claim within the time fixed, namely, January 4, 1940.

His neglect to identify himself as a creditor in the proceeding has been held to effectually bar his rights, whatever they may be, and in considering this motion it is necessary to inquire concerning his diligence in the assertion of what he conceives to be his rights.

In brief, the record shows that he was sufficiently apprised that his employment under the contract was deemed by the debtor to have been brought to an end as early as December 13, 1939 (the date of filing the petition) to have taught him the plain necessity for putting himself on record promptly before the referee, as one who deemed himself to be a creditor whose interest would be materially and adversely affected by any arrangement which might result from the filing of the debtor's petition.

An apparent purpose underlying Section 308 of the Act was to afford opportunity to one whose status in the proceeding might be debatable, and the petitioner's alleged misgivings as to whether he was a creditor or not are entirely dissipated by an impartial examination of his own testimony before the referee. Thus on page 16 the following appears:

"Q. Was any talk had by you (the petitioner and one Frank, the president of the debtor) between the period of December 13th and January 3rd with respect to your salary? A. I was told there was no provision made for my salary when they submitted schedules to the referee for salaries.

"Q. Did you receive any salary? A. I did not.

"Q. Did you have any talk with Mr. Frank about your salary? A. I asked many times.

"Q. What did he tell you? A. He said there is no provision made anywheres for any money and you will have to see what happens if Superior or somebody takes over this proceeding."

Again, on re-direct examination, page 71, referring to the hours each day during which the petitioner tendered his services to the debtor after the filing of the petition on December 13th, the following appears:

"Q. Just tell the referee what your custom was to the best of your recollection when you came to work every day. A. Prior to the 13th?

"Q. No; immediately after the 13th. A. I was advised to make sure that I reported, because I did not want in any way to jeopardize my chances under this contract.

"Mr. Blanc: I object to that.

"The referee: Your lawyers advised you to that effect?

"The witness: That is right.

"A. (Continuing) And I reported every day in the morning and afternoon, with the exception of one morning I was at the doctor. I offered my services as often as I saw Mr. Frank in his office.

"* * *

"Q. And was that after you had found that no mention had been made of your contract in the plan of reorganization? A. That is right, and no provision for my salary."

It is impossible to conclude from the foregoing that there was any doubt in the petitioner's mind, for the period of eighteen days in December and four days in January, that his contract was being held so lightly by the debtor, that some affirmative step should be taken on his behalf, if he were to protect the rights which he later asserted. Plainly he was acting under the advice of counsel, as appears from the foregoing, and from other portions of the testimony.

Why he did not make a motion with the referee to compel the debtor to file his executory contract with the petition, or otherwise seek relief under Section 308 of the Act, is nowhere demonstrated.

The foregoing has to do with the essential equities of the petitioner on this motion; it does not treat of the plain deficiency of his legal position for failure to object to the confirmation of the plan, or to seek relief as a person aggrieved by the order of confirmation, under Section 39, sub. c, of the Bankruptcy Act, as amended in 1938, 11 U.S.C.A. § 67, sub. c. His motion is in effect a collateral attack upon the order of confirmation, and is thought not to have a sound basis within the terms of the statute.

The funds now held, the payment over of which he seeks to arrest, are on deposit with the clerk of this court for distribution pursuant to the order approving the arrangement, from which no review has been sought, and the time has expired within which that might have been done; many thousands of dollars are involved, as are the rights of all unsecured creditors of the debtor, and it would be unfair to them and

to the purposes contemplated by the arrangement, to grant the stay.

For manifest lack of equity, the petitioner's attempt to prevent the distribution or otherwise hamper the carrying out of the arrangement must fail, and the motion for a stay is denied.

B. Turning now to the petition to review the holding of the referee that petitioner is not presently entitled to relief under Section 308, it is to be observed that the referee has made findings, in denying the petitioner's motion, which are recapitulated in the following language (page 80):

"To sum up, I have found, first, that the petitioner has no claim here in the arrangement proceeding, as distinguished from liquidation, by reason of his failure to file within the time fixed; second, that this contract in any event is void by reason of the provisions of Paragraph 14 of the contract, said contract being a challenge to the jurisdiction of this court, and not having been approved by this court, and in derogation of the express provisions of the Chandler Act; next, that there was an executory contract in existence, provided said contract is found to be valid, at the time of the filing of the petition herein, and which was not listed by the debtor under Section 324, and has not been disaffirmed or rejected by the debtor under Section 353, through the plan, or by permission of the court.

"I further find that as to the question of damage under an executory contract, the damage would be at the rate of $75 a week from December 13, 1939, to February 1, 1940, and from that time until December 31, 1940, $100 a week.

"* * *

"At the request of the debtor, I make the further finding that this petitioner, who claims to have been acting under his contract continuously after the filing of the petition herein, did breach the contract on his own theory by his failure to perform the duties he was instructed to perform by the president and secretary of the company with reference to slow moving inventory; however, it should also be found that at the time the position of the debtor was that the petitioner was not acting under his contract and was not requested to perform these services under the contract, but the direction was given to him with a view to giving him some employment through which he could obtain compensation through commissions."

In so much of the foregoing as has to do with the failure of the petitioner to file his claim on January 4, 1940, the referee's finding is in accord with the evidence.

On January 4, 1940, which was the last day for the filing of claims, the petitioner, apparently acting under legal advice, wrote a letter in reply to one which he had received on that day, or the day before, which notified him that the debtor considered that he had committed a breach of his contract; in that letter he denied in substance that such was the fact, and gave notice of his intention to avail himself of the contract.

If he had the opportunity to write that letter, he also had the opportunity to file a claim with the referee, either for breach of the contract by the debtor (in which event it would have been appropriate to seek to liquidate his damages) or for compensation in accordance with the rates established by the contract during the period that the debtor was retained in possession pursuant to its petition for an arrangement, on the theory that such compensation would constitute an administrative expense.

From what has been said in connection with the first motion, it is apparent that this was a situation that did not develop overnight. The petitioner had been plainly told that, unless the new interests which were negotiating to finance the debtor's arrangement saw fit to employ him, his remuneration was at an end, and that was the practical element of the contract to him.

If he chose to ignore these repeated warnings, and failed to qualify himself as a creditor by filing a claim within the time fixed by the referee for that purpose, he has no one but himself to blame for his lack of present status.

With a portion of the remainder of the referee's findings, this court is not in accord.

The contract is so unusual that it is unlikely that a similar state of affairs will be presented in the future, and therefore an extended comment would be inappropriate.

I do not agree that the contract was manifestly entered into for the purpose of putting the petitioner in a favored position on the eve of arrangement proceedings, at least so far as its terms disclose; nor is paragraph 14 so repugnant to the public interest that its presence should be deemed to vitiate the contract. At most, that paragraph would be disregarded as ineffectual, without impairing the instrument

in its entirety. Cf. McCullough v. Clinch-Mitchell Const. Co., 8 Cir., 71 F.2d 17, at page 21, certiorari denied 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678.

It merely recites that the agreement shall be binding in the event of any corporate reorganization under the Chandler Act or any superseding law, as well as in the event of any agreement by creditors for an extension or composition.

Of course that provision could not rob the court of its statutory powers to deal with such an executory contract; on the other hand it is refreshing to observe, at least in appearance, that parties to a contract are willing to agree to forego an easy escape from contractual obligations and to deny themselves the privilege of repudiation, even though there is a statutory beckoning thereto.

Perhaps there would be a sturdier commercial morality governing business relations than exists, if the community were to be encouraged to exercise self-restraint against the blandishments of easy repudiation of contractual obligations.

It seems that the referee finds that the contract was breached by the debtor and not by the petitioner. If that is what the findings mean, this court is in agreement.

For the reasons stated, the petition to review is denied. Settle orders.