## RIPLEY *v.* UNITED STATES.
## UNITED STATES *v.* RIPLEY.

### APPEALS FROM THE COURT OF CLAIMS.

Nos. 498, 499. Submitted December 22, 1911.—Decided March 11, 1912.

Where the power of the Government over the contract is complete and its agent's decision is conclusive, a corresponding duty exists that the agent's judgment should be exercised reasonably, and with due regard to the rights of both contracting parties; and in this case, as the Court of Claims has found that the agent's decision was a gross mistake and in bad faith, the contractor is entitled to recover the damages actually sustained by him by reason thereof.

Where there is no provision in the contract for an appeal from the decision of the agent in charge, the contractor does not have to appeal to a higher officer from the decision of the agent whose judgment and decision is expressly made final by the contract.

For the contractor to recover damages caused by an improper decision of the Government's agent in charge, the burden is on him, and this court must base its decision on the record.

Where the contract provides that the decisions of the engineer in charge are final, they are so in the absence of fraud or gross mistake implying fraud; and, in the absence of a finding to the effect that there was fraud, the contractor cannot recover damages on the ground that such decisions were erroneous.

45 Ct. Cl. 621, modified and affirmed.

APPEAL and cross appeal from a judgment by the Court of Claims for $14,732.05 in favor of Henry C. Ripley against the United States, in a suit for the recovery of damages of a public work consequent upon the action of the agent in charge.

By the act of June 13, 1902, 32 Stat. 340, Congress appropriated $250,000 for the completion of the work of improving the harbor of Aransas Pass, Texas. The contract was awarded to Henry C. Ripley. It provided for

the completion of a jetty, having a brush foundation, to be covered with a layer of stone, on which was to be built a superstructure, with sloping sides and a top width of ten feet. This superstructure was to be formed of a core or mound of riprap, "and when in the judgment of the United States agent in charge, this mound has become sufficiently consolidated, its gaps shall be filled and its crest levelled; . . . large blocks shall then be bedded in the crest of the mound."

It was provided that—

"Where the contract contemplates the placing of the materials in the work, the material shall be placed securely and carefully where directed by the U. S. Agent in charge. . . .

"All material furnished and work done under this contract shall, before being accepted, be subject to a rigid inspection by an inspector appointed on the part of the Government, and such as does not conform to the specifications set forth in this contract shall be rejected. The decision of the Engineer Officer in charge as to quality and quantity shall be final."

The contract also provided that the work should be executed under the supervision of the engineer officer in charge or his duly authorized agent. The United States was to employ one or more inspectors, and the contractor, without additional compensation, was bound to furnish facilities for the inspection of work and material. The contractor was to furnish extra labor at cost prices, as determined by the engineer, and should furnish board and lodging to Government employés at reasonable rates satisfactory to the engineer. If the work was not diligently prosecuted the contract might be annulled, or the engineer in charge, "with the prior sanction of the Chief of Engineers, may waive for a reasonable period the limit originally set for the completion of the work and remit the charges for the expenses of superintendence and inspec-

tion for so much time as in the judgment of the engineer officer in charge may actually have been lost on account of . . . violence of the elements, or by epidemic, or local or State quarantine restrictions, or other unforeseeable causes of delay arising from no fault of the contractor, and which actually prevented him from commencing or completing the work within the period required by the contract."

Claimant entered upon the performance of the contract August 18, 1903, and completed 2,100 feet of jetty when operations ceased about September 17, 1904, owing to the exhaustion of the appropriation.

About the time work began, without fault on the part of the contractor or of the United States, there was a delay of about thirty days, due to the fact that contractor's tug, while in charge of a licensed pilot, was grounded on a sand bar. The Government apparently incurred expenses for inspection during this period and deducted that amount from Ripley's account.

Owing to an epidemic of yellow fever the force of the contractor was disorganized, and work was necessarily suspended for thirty days. The Government did not charge him with inspection expenses during the fifteen days the quarantine was in force, in a city through which the cars hauling the material were prevented from passing. And the court held also that Ripley was not chargeable with the inspection expenses for the other fifteen days, during which his force was scattered as a result of the epidemic.

During the progress of the work, a large number of blocks were rejected by the inspector as not conforming to specifications. "Many of those so rejected were afterwards accepted, but ninety of the stones offered as crest blocks were rejected as such, and were accepted and used as riprap and paid for as such. The difference in the amount paid claimant for said stones used as riprap and

the amount he would have received if they had been used as crest blocks" was allowed him by the Court of Claims. It found that "he was compelled to furnish other crest blocks to take the place of those rejected, which caused a delay of ten days to claimant in the completion of the work."

It appears that the rejection of these blocks was due to a difference in the method of measurement, the inspector insisting that the blocks should be measured at the narrowest, thinnest and shortest points. The contractor contended that mean or average measurements should be taken, claiming that this was the understanding of himself, and the officer who drew the specifications. The engineer at Galveston thereupon suggested that the matter should be referred to the Chief of Engineers in Washington; and later a supplementary agreement was drawn, which permitted the use of blocks "which would make the work as stable, or more stable, than if the dimensions conformed strictly to the letter of the specifications. In consideration of which change the contractor agrees to accept $5.00 per ton for all blocks received under the supplementary agreement which would have been rejected under the original specification."

The plaintiff's claim for additional compensation for extra labor furnished the Government and for board and lodging furnished its employés was rejected by the court, as also his claim for damages for double handling caused by the inspector's refusal to permit him to unload certain material on the jetty.

The contractor's principal claim, however, was for damage caused by the delay resulting from the refusal of the inspector in charge to permit crest blocks to be laid after the core had fully consolidated. As long as the jetty was uncovered by these blocks it was subject to the rough action of the waves, and the plaintiff's employés were deprived of the advantage of working in still water on the

lee side of the jetty. The work began August 18, 1903, and the court found as a fact "that in December, when plaintiff had completed 200 feet of the core, he requested permission to lay the blocks. This was refused, on the ground that the core had not been consolidated. By the end of December he had completed 500 feet, and again requested permission to lay the blocks. The inspector refused and continued to refuse permission to lay the blocks until May 1, 1904, at which time 1,500 feet of the core had been repaired and completed."

"Commencing in October, 1903, the contractor began to lay the slope stones, and from December, 1903, until May, 1904, it was manifest that large parts of the work done by him were fully settled and consolidated. If the claimant had been permitted to lay the crest blocks from the time on, as the work progressed, there would have resulted an additional protection, which would have enabled him to work sixty days more within the period between that time and May 7, 1904, when the first crest block was laid."

"The total cost to claimant of performing the contract, exclusive of the cost of the granite and the cost of transport and fitting up and repairs to barges, was $63,780. The total number of days from the beginning to the completion of said work was 392, making an average daily cost to the contractor of $162.70. The work was completed on September 17, 1904. The number of days of actual work performed was 131, of which 58 was subsequent to the 30th day of April, 1904." "Claimant, under the requirements of the specification, personally superintended the work for the whole time. The value of his personal services while so doing was $750 per month, but it does not appear that at this particular time he had any other enterprise under way or any other employment."

The court entered judgment for plaintiff for $14,832.05 —made up of damage for difference between price of

large blocks and riprap, delay caused by such rejection, value of ten days' services of plaintiff during the delay, remission of expenses for additional fifteen days during yellow fever epidemic, remission of expenses while tug was grounded on a sand bar, value of contractor's time during 60 days' delay occasioned by refusal to permit crest blocks to be laid, $1,500, and average daily expense $162.70, and remission of inspection charges during the 60 days' delay.

After the case was argued here it was twice remanded (220 U. S. 491; 222 U. S. 144), and the Court of Claims made the following additional findings of fact:

"When denying permission to the claimant to lay the crest blocks, as stated in finding 7, the assistant engineer, who was an experienced officer of the Government in such work, and who was acting as inspector in immediate charge of the work, knew that large parts of the core theretofore completed by the claimant had fully settled and consolidated and were ready for the crest blocks to be laid thereon.

"2. The refusal of said assistant engineer, as inspector in immediate charge of the work, to allow crest blocks to be laid when he knew that parts of the core had settled and consolidated as aforesaid, was gross error and an act of bad faith on his part.

"3. There was no protest made to the engineer in charge, whose office was in Galveston, or to the Chief of Engineers, whose office was in Washington, respecting the refusal of said assistant engineer to permit the laying of crest blocks as aforesaid. The claimant made frequent complaints to said assistant engineer about the delays so caused by his refusal to permit the laying of crest blocks.

"Claimant visited the office of the engineer in charge at Galveston about once a month, and while there complained generally that said assistant engineer, as inspector in immediate charge of the work, was too strict with him in construing the specifications and contract. No appeal,

either written or otherwise, was taken or asked by the claimant to either the engineer in charge or to the Chief of Engineers, because of the said refusal to permit the laying of crest blocks."

*Mr. William H. Robeson, Mr. Benjamin Carter* and *Mr. F. Carter Pope* for appellant.

*Mr. Assistant Attorney General John Q. Thompson* and *Mr. Philip M. Ashford* for the United States.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The plaintiff sued the United States in the Court of Claims for damages sustained by him while carrying out a contract to build a jetty in the harbor of Aransas Pass, Texas. There were nine items in his claim, which aggregated $45,950. The court rendered judgment in his favor for $14,732.05. Both parties appealed—the contractor on the ground that he was awarded too little, and the United States on the ground that he was not entitled to recover anything whatever. The principal contention related to the right of the plaintiff to recover damages occasioned by the refusal of the inspector to permit blocks to be laid on the jetty as the work progressed. The contract provided that these blocks should be put in place when "in the judgment of the United States agent in charge" the core or mound had sufficiently consolidated. Until the agent determined that the core had settled, the contractor had no right to do this part of the work. No matter how long the delay or how great the damage, he was entitled to no relief unless it appeared that the refusal was the result of "fraud or of such gross mistake as would imply a fraud." *Martinsburg & P. R. Co.* v. *March,* 114 U. S. 549; *United States* v. *Mueller,* 113 U. S. 153.

But the very extent of the power and the conclusive character of his decision raised a corresponding duty that

the agent's judgment should be exercised—not capriciously or fraudulently, but reasonably and with due regard to the rights of both the contracting parties. The finding by the court that the inspector's refusal was a gross mistake and an act of bad faith necessarily, therefore, leads to the conclusion that the contractor was entitled to recover the damages caused thereby.

The defendant claims that the plaintiff lost his right to recover because he failed to appeal to the Engineer in Charge, at Galveston, or to the Chief of Engineers, in Washington. But there was no requirement or provision for appeal in the contract. The clause relied on by the Government relates to the duty of inspection and acceptance, making the decision of the Engineer in Charge conclusive as to the quality and quantity of work and material. That part of the agreement had no reference to the settlement of the core. Whether it had sufficiently consolidated involved the determination of a matter of fact, varying from day to day. The contractor had to act or refrain from acting when the decision was made. That matter was expressly left to "the judgment of the United States agent in charge." The contractor in submitting to his decision did not lose his right to recover damages occasioned by the refusal to permit the crest blocks to be laid, when, as found by the court, this refusal was gross error and an act of bad faith.

The court, therefore, declared in plaintiff's favor on this issue. He appeals, however, on the ground that the court only allowed him $11,908.90, being for expenses and loss of time for sixty days, insisting that he was entitled to recover $28,953 as damages directly caused by this delay.

This claim is based on the fact that there were 392 days between the beginning and the completion of the work. But on account of Sundays, holidays and storms, there were only 131 working days. Of these, 58 were after April 30, 1904—when, for the first time, the inspector permitted

the crest blocks to be laid. The contractor contends that as it only took him 58 days after May 1, when the permission was given, to complete the work, and, as the court finds, that he was delayed for 60 days before the permission was given, it is evident that he could have finished the work before May 1, and is therefore entitled to recover the value of his own time and all the expenses for inspection and labor which were incurred after that date.

The findings of fact do not require any such conclusion. Prior to May 1 the contractor worked 73 days out of 247. But it does not appear how many of these workings days there were between August 18, 1903, when he began construction, and December, 1903, when he first applied for permission to lay the crest blocks. Neither is it shown how many workings day there were between the date of the first refusal and the first permission to lay the blocks; nor on how many of such working days the contractor was able to do labor of another character on the jetty. In the absence of such data it is impossible to verify plaintiff's calculations. The burden was on the contractor. If the evidence would have sustained his present claim he was bound to have applied, in due season, for additional findings of fact by the court. Our decision must be predicated on what appears in the present record. Inasmuch as the court found that $162.70 was the average daily expense, and assessed plaintiff's damage at 60 times that amount, it is evident that it considered that the contractor had been delayed for 60 average days, and not for 60 working days. He is, therefore, entitled to judgment for $9,762 expenses, $646.92 inspection charges, and $1,500 found to have been the value of his own time for that period of sixty days.

The other findings in his favor for items aggregating $2,822. must be reversed, and the cross appeal of the Government sustained.

The greater part of this sum was for loss and delay arising from the inspector's rejection of 90 large blocks

as not complying with the specifications. The fact that the court gave judgment in Ripley's favor indicates that it was of opinion that the agent had made an improper decision. But so far as appears his only error was in con- struing the contract strictly, according to its terms, instead of adopting a method of mean or average measurement for which the contractor contended. The supplemental agreement was not retroactive so as to give the plaintiff a cause of action for the prior rejection, even though there- after a different method of measurement was permitted.

The balance of the amount allowed the plaintiff was by way of returning the expenses of inspection which had been charged against him, during the suspension of the work while the tug was grounded on the bar and the contractor's force disorganized on account of the yellow fever epidemic. The contract provided that the expenses of inspection might in some cases be remitted but this could only be with the prior consent of the Chief of En- gineers. There is no finding that such consent was given.

But the error in entering judgment in Ripley's favor as to any of these items, and the propriety of disallowing the others for which he sued arises from the fact that the officer's decision was binding. All these claims relate to matters which under the contract were submitted to the engineer. There is no finding that he acted in bad faith. Indeed, it is not even found that the decisions were erroneous, though that is implied. But the contract did not contemplate that the opinion of the court should be substituted for that of the engineer. In the absence of fraud, or gross mistake implying fraud, his decision on all these matters was conclusive.

On the findings of fact the plaintiff is entitled to recover $11,908.90, with interest as provided in Rev. Stat., § 1090. The judgment of the Court of Claims must be so modified and                                        *Affirmed.*[1]

---

[1] See order on p. 750, *post.*