Littleton, Judge,
delivered the opinion of the court:
December 21, 1933, The Dravo Contracting Company, a Pennsylvania corporation, entered into a contract with the defendant through the Corps of Engineers of the War Department for the construction of two parallel locks and appurtenant works at the Gallipolis Locks and Dam on the1 Ohio Eiver, near Gallipolis, Ohio. The contract and specifications, portions of which are hereinafter set forth, are attached to the original petition herein, and are made a part hereof by reference.
December 31,1936, plaintiff succeeded by operation of law to the entire business, assets and liabilities, including the claim here involved, of The Dravo Contracting Company. No question as to the right of plaintiff to maintain and prosecute this suit is involved and, for convenience, The Dravo Contracting Company and the Dravo Corporation will hereinafter be referred to as “plaintiff.”
Plaintiff constructed a cofferdam and the two parallel locks and appurtenant works in strict accordance with the terms of the contract and all modifications thereof, and did and performed all things which it undertook to do and perform,' as directed by the officers and employees of the defendant. Art. 1 of the contract provided that “The contractor shall furnish all labor and materials, and perform all work required for constructing two parallel locks, including guide and guard walls, gates and gate operating machinery, valves and valve operating machinery, and piping at the Gallipolis Lock and Dam, Ohio Eiver, near Gallipolis, Ohio, for the consideration of a sum based on designations and unit prices specified in schedule appended hereto in strict accordance with the specifications, schedules, and drawings, all of which are made a part hereof * * This article further provided as follows:
The work shall be commenced within ten (10) calendar days after the date of receipt by the contractor of notice to proceed, and shall be completed within 650 calendar days after the date of receipt by the contractor of the aforesaid notice to proceed.
*272 An amount of time equal to that lost as a result of the flooding of cofferdam built to the required height caused by rises in the Ohio River (see par. 9 of specifications) will be allowed in addition to the 650 calendar days specified for the completion of the work, provided it is clearly established that this time is not due to any negligence on the part of the contractor.
Par. 1-02 of Section 1 of the Detail Specifications, made a part of the contract and entitled “Cofferdams, Excavation, Foundations and Fill,” provides as follows:

Cofferdam,.

(a) The entire work shall be constructed within a cofferdam as indicated on sheet 19/1. The cofferdam shall consist of connected circular cells of interlocked steel sheet piling driven to refusal in rock. The cells shall be filled with suitable material and capped with a 6-inch layer of concrete. The cofferdam shall be built to elevation 530.0 which is 18 feet above the normal pool above Dam No. 27, Ohio River. The base width of the cofferdam shall be at least equal to its height unless equal stability is otherwise provided.
Par. 9 of the specifications referred to in the last above-quoted provision of Art. 1 of the contract provides as follows:
(a) In the event that work remains to be done and is actually in progress within the cofferdam constructed to the height specified in Section 1, and a rise in the Ohio River overtops the cofferdam where built and maintained to the full height specified in paragraph 1-02, an allowance of $5,000 will be made to the contractor upon full resumption of work within the cofferdam, subject to the following: Only one allowance will be made for a rise, allowances for overtopping of the cofferdam will be made only during the period allowed for completion of the work under paragraph 6 of these specifications, and such extension thereof as • may be allowed under Articles 3 and 9 of the contract.
(b) No allowance will be made in case the cofferdam is flooded through failure of the cofferdam. In case the contractor floods the cofferdam during a rise prior to natural flooding due to overtopping the cofferdam, the flooding will be considered grounds for the allowance provided the rise actually overtops the cofferdam where built to the full height specified.
*273 Plaintiff prepared and submitted plans and blue prints to the defendant for a cofferdam showing a height to elevation •530, as required by the specifications, and such plans were approved by the contracting officer. The plaintiff thereupon constructed the cofferdam to elevation 530 as called for by the specifications and in accordance with plans and blue prints submitted to and approved by the contracting officer. In addition to the construction of such cofferdam to elevation 530, the plaintiff of its own volition and without request or direction by the contracting officer, either orally or in writing, but with the knowledge and acquiescence of defendant’s officers and employees having charge of the work called for by the contract, added, at its own expense and with its materials, two feet to the height of the cofferdam as called for by the contract and specifications, thereby bringing the height of the cofferdam to elevation 532 feet. This voluntary increase in the contract height of the cofferdam was made by plaintiff as a precaution against flooding of the cofferdam and resulting interference with the work to be constructed and performed therein, in the event the waters •of the Ohio Eiver in the pool above the dam should reach a stage above elevation 530 but lower than 532. The petition alleges that “the cost of this extra 2 feet of construction work together with the expense of removal of machinery and other extraordinary outlays caused by floods on the two occasions when the water exceeded 530 feet, but did not exceed 532 feet, was in excess of $10,000.00.”
April 8, 1934, while work called for by the contract was actually in progress within the cofferdam, and while other such work remained to be done, a rise in the Ohio Eiver occurred which exceeded elevation 530 at the place where the cofferdam was constructed and maintained, but the rise did not reach elevation 532. During this rise plaintiff discontinued operations but as soon as practicable, and within a day or two thereafter and while there remained work to be done within the cofferdam, plaintiff resumed work. The cofferdam was not overtopped or flooded. On February 28, 1935, while work was actually in progress within the cofferdam and while other such work remained to be done under the contract, another rise in the Ohio Eiver occurred during *274 which the water in the pool above the dam, on which the cofferdam was constructed, exceeded elevation 530 at the place where the coiferdam had been constructed and was maintained but did not reach an elevation of 532. The water did not overtop the coiferdam and it was not flooded. As soon as practicable, and within a day or two after this rise the waters subsided, and while there remained work to be performed within the cofferdam, the plaintiff fully resumed such work.
At some time subsequent to the two rises in the waters of the Ohio River on April 8, 1934, and February 28, 1935, the exact date not being stated, plaintiff demanded of defendant payment of $10,000 which plaintiff claimed was due it under par. 9 of the specifications because these two rises in the waters of the Ohio River had exceeded elevation 530, thereby “overtopping the specified height of the cofferdam as required to be constructed.”
It is further alleged in the petition that this “payment has been refused by the Chief of Engineers, acting for the defendant and said claim has been presented to and disallowed by the Comptroller General of the United States.”
The facts set forth above, which are the facts well pleaded in the petition filed in this case, to which the defendant has interposed a demurrer, do not in our opinion state a cause of action entitling plaintiff to recover under the quoted provisions of the contract and specifications upon which the claim is based. Plaintiff does not sue and could not maintain suit to recover extra costs or expense of constructing the cofferdam two additional feet above elevation 530, as specified in the contract and the specifications, for the reason that the material so used and the expense of such work were voluntarily supplied by the contractor without such work and materials being ordered or approved in writing, or otherwise, by the contracting officer.
Art. 5 of the contract provided that “Except as otherwise herein provided, no charge for any extra work or material will be allowed unless the same has been ordered in writing by the contracting officer and the price stated in such order.” It is well settled that under such a contract provision no recovery can be had for extra costs of labor and material *275 unless ordered or specifically approved in such a way as to show a purpose to bind the United States in accordance with the contract to pay therefor. Mere failure to object is not enough. Art. 15 of the contract entitled “Disputes” provided that “All labor issues arising under this contract which cannot be satisfactorily adjusted by the contracting officer shall he submitted to the Board of Labor Beview. Except as otherwise specifically provided in this contract, all other disputes concerning questions arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto as to such questions.” Plaintiff does not allege that the decision of the contracting officer denying its claim for $5,000 each for the two rises in the river above elevation 530 was arbitrary or so grossly erroneous as to imply bad faith.
It is not alleged or claimed that the contracting officer ordered in writing or otherwise that the contractor furnish the material and perform the work necessary to add 2 feet to the specified height of the cofferdam. It is alleged in the petition that the plaintiff added two additional feet to the height of the cofferdam with the “knowledge, acquiescence, and approval of the defendant, its officers and employees having charge of the particular work involved,” but this general allegation is not sufficient, in view of the provisions of Art. 5 of the contract, to entitle plaintiff to recover anything on account of having incurred any increased expense incident to the construction of the cofferdam or to entitle plaintiff to recover the allowance of $5,000 or more mentioned in par. 9 of the specifications, unless, independently of art. 5, plaintiff is entitled to recover one or more allowances of $5,000 under the terms and provisions of art. 1 of the contract and paragraphs 9 and 1-02 of the specifications, We lay aside therefore, as having no bearing upon the question presented, the fact that the contracting officer may have had knowledge of, acquiesced in, or made no objection to the addition by plaintiff of two feet to the height of the cofferdam. Moreover, the cost of constructing the coffer *276 dam was an item of expense to the contractor for furnishing to the Government the completed structure called for by the contract, i. e., the two completed parallel locks at the dam in question. The cofferdam was not a part of the completed structure called for by the contract to be delivered to the defendant in strict accordance with the contract and specifications for its subsequent use. Nor is there any allegation in the petition that the actual cost of the cofferdam as constructed by plaintiff exceeded the amount of the expense therefor included in its bid and in the contract for the cost of constructing the necessary cofferdam. This was a unit price contract and the total estimated contract price, based upon the estimated quantities of each unit of work specified, was $3,145,790, including the lump sum bid and accepted as the maximum sum that would be paid as the total for all necessary cofferdam work.
In any event, we are of opinion that under a proper construction of the contract and specifications, the facts well pleaded in the petition do not entitle plaintiff to recover. Plaintiff bases its right to recover allowances of $5,000 each for the two rises of waters in the Ohio River on April 8, 1934, and February 28, 1935, entirely upon its interpretation of the meaning of the words “overtops” and “overtopping” found in par. 9 of the specifications and insists that the allowance of $5,000 specified in art. 9 of the specifications became due and payable each time that the waters of the Ohio River rose to an elevation in excess of 530 feet even though the cofferdam as constructed was not flooded and the waters of the river did not flow over the top of or into the cofferdam. We cannot concur in plaintiff’s construction of the contract and specifications. In construing a contract all its provisions and the surrounding circumstances must be taken into consideration in arriving at the intention of the parties and the correct meanings of the words and phrases used therein.
In Joice v. United States, 51 C. Cls. 439, 442, 443, this court said:
In ascertaining the meaning to be ascribed to said phrase we must consider the entire contract, its purposes, the surrounding circumstances, and the facts known to *277 tbe parties, with reference to which, it may be considered they contracted. We can not take a detached part of a specification or contract and give it a meaning that if standing alone it might receive when upon examining the whole specification and contract and giving proper weight to the other considerations we have mentioned the meaning of the phrase in the particular contract appears to be different from what it might be under the usages of trade.
In Moran v. Prather, 28 Wall. 492, 501, the court said:
All the facts and circumstances may be taken into consideration, if the language be doubtful, to enable the court to arrive at the real intention of the parties, and to make a correct application of the words of the contract to the subject-matter and the objects professed to be described, for the law concedes to the court the same light and information that the parties enjoyed, so far as the same can be collected from the language employed, the subject-matter, and the surrounding facts and circumstances.
In Black et al. v. United States, 91 U. S. 267, 269, the court said:
For the purposes of construction, we must look to the whole instrument. The intention of the parties is to be ascertained by an examination of all they have said in their agreement, and not of a part only.
In Merrill-Ruckgaber Company v. United States, 241 U. S. 387, 392, the court said:
The case is in narrow compass. It involves for its solution the construction of a contract, and the rules to guide such construction we need not rehearse. To its words we at first resort, but not to one or a few of them but to all of them as associated, and as well to the conditions to which they were addressed and intended to provide for. The argument of appellant ignores this rule. As we shall see, it makes one word dominant, controls all others by it, and puts out of view the demands of the physical conditions.
See also Merriam v. United States, 107 U. S. 437, 441.
Applying these rules to the language used in art. 1 of the contract and paragraphs 1-02 and 9 of the specifications, we think the intention of the parties as expressed in the contract *278 with respect to the conditions under which the allowance of $5,000 for a rise in the Ohio Eiver would be made becomes clear. It thus seems evident from a consideration of all the pertinent language of the contract and specifications that provision was being made for payment of the allowance of $5,000 mentioned in par. 9 of the specifications only in case the cofferdam was actually overtopped and flooded by a rise in the river. It is perfectly obvious from the language of the contract and specifications that if the cofferdam, constructed as specified in par. 1-02 of the specifications mentioned in art. 9, was overtopped by a rise in the waters of the Ohio Eiver, such cofferdam would be flooded as art. 1 of the contract and the title of par. 9 of the specifications clearly stated. It was on that basis and on that condition alone that it was stipulated that an allowance of $5,000 would be made upon full resumption of work within the cofferdam. It is also perfectly clear from a reading of the contract and specifications that it was not contemplated by either party when the contract was executed that the cofferdam would be constructed to an elevation in excess of 530 feet unless so ordered by the defendant under art. 3, or that any other means might be provided to prevent the water from flowing into and flooding the cofferdam and still leave a contractor entitled to the allowance of $5,000 for each rise in the waters of the Ohio Eiver above elevation 530. The stipulated allowance was not merely for a rise in the river. Par. 9 of the specifications, in which the allowance of $5,000 is provided, is entitled “Flooding of Cofferdams,” and in par. (b) reference is made “to natural flooding due to overtopping the cofferdam.” These and other statements in the contract and specifications, and the possible event concerning which the parties were making provision, show, we think, that the parties used the words “overtops” and “overtopping” as meaning and having reference solely to the matter of overflowing or flooding of the cofferdam. The subject matter which constituted the basis for the allowance of $5,000 mentioned in the specifications was clearly, we think, the “flooding of the cofferdams”, and since the cofferdam in the case at bar was not flooded by any rise in the Ohio Eiver which over- *279 topped it there is no authority in the contract provisions for the recovery of $5,000 for each of the two rises in the river. This conclusion is consistent with the definition given in Webster’s New International Dictionary of the word “over-topped” as follows: (1) to rise above the top of; to exceed in height; to tower above. (2) to go beyond; to transcend; to override. * * * (5) to cover, flow over, or to cast shade over the top of.”
When this definition is applied in the light of the other language of the quoted provisions of art. 1 of the contract and art. 9 of the specifications, it becomes clear that the words “overtops” and “overtopping” were intended to have reference to the overflowing and flooding of the cofferdam as a result of a rise in the Ohio Eiver and that the payment of the stated allowance of $5,000 was conditioned upon the cofferdam being flooded as a result of the rise of the waters of the Ohio Eiver. If the contract had intended that an allowance of $5,000 would be made to plaintiff each time the-waters of the Ohio Eiver in the pool above Dam #27 rose-above elevation 530, which is in substance and effect what, plaintiff here contends and is the theory upon which the suit, is based, we think that right of plaintiff would have been stated in the contract and specifications in clear and simple language. There would certainly have been no occasion for repeated references in the contract and specifications to “flooding of cofferdams.”
In addition to our conclusion that the petition does not state a cause of action under the proper interpretation of the contract for the reasons hereinbefore stated, we are of opinion that art. 15 of the contract precludes recovery upon the facts alleged in the petition. Art. 15 provided that all disputes concerning questions arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly-authorized representative, whose decision shall be final and conclusive upon the parties thereto as to such questions.. Whether plaintiff was entitled to demand and to receive the two allowances of $5,000 each, under par. 9 of the specifica *280 tions, under the existing facts, conditions, and circumstances resulted in a dispute between the parties concerning a question arising under the contract. In view of the clear language of art. 15, the decisions of the contracting officer and the head of the department against plaintiff on this question were final and conclusive, unless those decisions were arbitrary or so grossly erroneous upon the facts before them as to imply bad faith. Plumley v. United States, 226 U. S. 545, 547; Merrill-Ruckgaber Co. v. United States, 241 U. S. 387, 393; Ripley v. United States, 223 U. S. 695, 701; United States v. John McShain, Inc., 308 U. S. 520, 521. The facts alleged in the petition are not sufficient to show that the decisions of these officers were arbitrary or grossly erroneous.
The demurrer is sustained and the petition is dismissed. It is so ordered.
Green, Judge; and Whaley, Chief Justice, concur.