Littleton, Judge,
delivered the opinion of the court:
More than seven months prior to the date on which plaintiff entered into the contract in suit with the defendant, the government had entered into a contract with the Great Lakes Dredge and Dock Company, herein sometimes referred to as the “masonry contractor” or the “concrete contractor,” to make the excavations, fills, foundations for the structure, esplanade fill and roadway, to construct the masonry for the lock and guide walls, and to perform certain other miscellaneous work. This contract provided for the completion of the work called for therein within 365 days after receipt of notice to proceed and contemplated that the work might not be completed within the period fixed. It was stipulated in art. 9 that if the contractor failed to complete the work on time it would pay the government liquidated damages for such delay as was not excusable under the provisions of that and other articles, and that for excusable delays the specified period for completion would be extended.
Plaintiff’s contract was for the construction, assembly, and installation of lock gates, Tainter valves, operating machinery for the gates and valves, oil piping, valve bulkheads, and lock emergency dams in the concrete masonry work by the Great Lakes Company under its contract with the defendant. Plaintiff’s contract was made in the light of the existing contract for the concrete lock structures in which the lock gates called for by plaintiff’s contract were to' be *711 installed, and provided in par. 1-06 (a) of the specifications that “The contractor will be required * * * to complete the entire work within 150 calendar days after the date of completion of the lock masonry contract at the site * * *. All parts of the work shall be prosecuted as vigorously as practicable during all seasons of the year.” Par. 1-03 (c) of plaintiff’s contract specifications set forth that “Work at the site is under contract and is now in progress on the construction of the lock masonry and esplanade fill, the entire contract being expected to be completed about January 30, 1937, unless delays occur.”
The plaintiff completed its contract far in advance of 150 days after date of completion of the lock masonry contract but seeks to recover, as damages, alleged unnecessary increased costs in performance of its contract by reason of alleged failure of the masonry contractor to prosecute its work properly and expeditiously and the failure of the contracting officer to require the masonry contractor to perform its work in a sequence and during such time as would enable the plaintiff to finish its work earlier.
The petition alleges that plaintiff’s contract contemplated the delivery and installation of the lock gates and metal work before January 30, 1937, while the existing cofferdam of the Great Lakes Company was in place; that it prepared to proceed accordingly but was unreasonably delayed because the Great Lakes Company delayed in its work; that “under its contract plaintiff should have had this service [cofferdam protection] without cost to it;” and that the total sum claimed as damages “represents the added or extra cost plaintiff and its subcontractors incurred in the performance of its contract by reason of the failure of the defendant to require the contractor for the foundation work, its agent in that behalf, to proceed with its work in such a manner as would not unnecessarily interfere with or delay the plaintiff’s work under its contract.” Upon these allegations it is contended that the defendant breached plaintiff’s contract by permitting, or causing, it to be unreasonably delayed and is therefore liable in damages for the increased costs and expenses which'plaintiff would not have incurred had the *712 lock masonry contract been completed by January 30, 1937, or within a reasonable time thereafter.
The facts as shown by the evidence do not establish, in view of the provisions of the contract with plaintiff and the contract with the Great Lakes Company, that the defendant breached its contract with the plaintiff. It is true that the Great Lakes Company was delayed in completion of its contract with the defendant beyond the period ending January 30, 1937, and that this delay resulted in the inability of plaintiff to install the lock gates until about five months after expiration of the period fixed for completion of the masonry contract, but this is not enough to entitle plaintiff to recover. The proof fails to show that the defendant caused, or was responsible for, any of this delay or that the delay experienced by the Great Lakes Company in the completion of its contract was unreasonable in the circumstances. During the period December 1936 to February 1937, the Great Lakes Company was unable to proceed with its concrete operations due to unusually cold weather which prevented excavation and hauling of gravel for the concrete. The masonry contractor was required to obtain its concrete aggregate from a special gravel pit, opened and operated as a government work-relief project, about 25 miles up the river from the site of the work. The pump which extracted the gravel would not operate in very cold weather because of ice forming on the belts and pulleys. The masonry contractor obtained as much gravel as it could, consistent with available storage space, before operations had to be suspended at the gravel pit. The Great Lakes Company had originally intended to pour the concrete lock walls prior to pouring the concrete floor of the lock passage in order to avoid moving heavy equipment over the floor but, due to the unexpectedly large quantity of water encountered and the variations in the composition of the river bed, it revised its plans and first constructed the concrete floor. In the period from January to May 1937 the Great Lakes Company’s operations were delayed by high water and, by reason of this, its time for completion was extended 48 days.
May 15, 1937, the Great Lakes Company encountered a large artesian spring in the vicinity of the upper gate mono *713 liths, which was an unforeseen and unanticipated condition which interrupted the work at that point. This spring discharged about 6,000 gallons of water per minute and was placed under control only after considerable difficulty and expense. The Great Lakes Company was unable to resume concrete operations in that vicinity until June 5, 1937.
In the circumstances under which the work was required to be performed by the Great Lakes Company, it was never possible for it exactly to conform pouring operations to an anticipatory progress schedule for the reasons that some of the concrete forms warped, or were rejected by the government and had to be rebuilt, and that some carpenters work faster than others. In addition, the Great Lakes Company had on this project a fleet of 17 vessels hauling materials and, in order to keep them moving, it poured concrete in whatever forms were ready to receive it, regardless of its anticipated schedule of operation. This was reasonable and proper. If the Great Lakes Company had undertaken strictly to adhere to its schedule which it had previously indicated it would endeavor to follow, regardless of such conditions, progress of the work would not have been continuous and the work would have been further delayed. None of the causes which operated to delay the Great Lakes Company in the prosecution and completion of its work was attributed to the fault of anybody, and certainly not to the fault of the government. As a consequence of the delay mentioned, the construction by the Great Lakes Company of the upper gate monoliths, where plaintiff was to install gates, was delayed and plaintiff did not commence active work in the erection of the gates until about July 6,1937. Under its contract the plaintiff assumed the risk of such delay in completion of the work which was necessary for the installation of the gates called for by its contract.
The proof is not sufficient to show that the defendant breached any provision of plaintiff’s contract by failure of the contracting officer to direct and require the Great Lakes Company, under par. 1-14 of the specifications (finding 6) of the Great Lakes Company’s contract and, also, of plaintiff’s contract (finding 5), to carry on and perform the masonry work in a sequence, or order of precedence, differ *714 ently from that in which the Great Lakes Company pern formed the concrete construction work called for by its contract. The question of how and in what order the Great Lakes Company and plaintiff should proceed with their work was one for decision by the contracting officer under paragraph 1-14 of the specifications and article 15 of the contracts, and it is not alleged in the petition or established by the evidence that he acted arbitrarily or failed to exercise an honest judgment in that regard. Burchell v. Marsh, 17 How. 344, 349, 350; Kihlberg v. United States, 97 U. S. 398, 401; United States v. Gleason, 175 U. S. 588, 602; Ripley v. United States, 223 U. S. 695, 701, 702; United States v. Rice, et al., 317 U. S. 61. Moreover, plaintiff made no protest to the contracting officer that it was being unreasonably delayed and it made no claim to the contracting officer, except in one instance, for any extra cost for extra or unnecessary work or expense not contemplated by its contract. Par. 1-19 of plaintiff’s contract, entitled “Claims and Protests,” provides as follows:
If the contractor considers any work required of him to be outside the requirements of the contract, or considers any record or ruling of the inspectors or contracting officer as unfair, he shall ask for written instructions or decision immediately and then file a written protest with the contracting officer against the same within 10 days thereafter or be considered as having accepted the record or ruling. (See Articles 3 and' 15 of the contract.)
The only letter which might be considered in the nature of a protest written by plaintiff to the contracting officer was the letter of July 13, 1937, set forth in finding 11. In this letter plaintiff called to the attention of the' contracting officer the fact that it had been unable to erect any of the material under its contract, because the Great' Lakes Company had digressed materially from its proposed pouring schedule, and stated that it appeared there would not be sufficient time remaining for plaintiff to complete its work before the Great Lakes Company was ready to flood its cofferdam, which plaintiff desired, under specifications 1-03 and 1-09, to use without expense prior to the completion by the Great Lakes Company of its contract. In this circum *715 stance plaintiff requested the contracting officer to take action under par. 1-14 of the Great Lakes Company’s contract specifications “to bring about the most expeditious completion of the upper gate sections of the foundation work, and all recesses for imbedded material so that the shutter dams can be installed at the earliest possible moment in case of necessity.” The shutter dam referred to which was to be installed by plaintiff was an emergency dam operative at times, other than at high water, for the purpose of unwater-ing the lock chambers and for making repairs to the gates. The evidence does not show what action, if any, the contracting officer took upon receipt of this letter from plaintiff. The contracting officer was familiar with the state of plaintiff’s work and the way in which the Great Lakes Company was performing, as well as the circumstances under which the work was being performed, and it would appear that he was satisfied after receipt of plaintiff’s letter with the progress of the Great Lakes Company and the manner in which it was performing its work. In any event, plaintiff’s proof is not sufficient to show that failure of the contracting officer to order and require the Great Lakes Company to carry on its. work in an order of precedence different from that in which it was carried on was unreasonable or arbitrary.
Paragraphs 1-03 and 1-09 of plaintiff’s specifications contemplated that delays might occur in the lock masonry work. Paragraph 1-03 stated only that cofferdam protection provided by the masonry contractor would be available to plaintiff “for protection of such work as is authorized to be executed [by plaintiff] under this contract prior to completion of the lock masonry;” and paragraph 1-09 specifically stated that any of plaintiff’s work “remaining to be done, after flooding and removal of the cofferdam” by the Great Lakes Company “shall be executed with suitable, approved protective structures and pumping equipment, provided and maintained by the contractor without separate payment for such necessary structures and attendant maintenance and pumping.” The work required of plaintiff and the expense which it was necessary .for it to incur in performing its contract have not been shown to have been more than was reasonably contemplated ánd necessary under the terms and conditions of its contract.
*716 Plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.
MaddeN, Judge; Whitakee, Judge; and Whaley, Chief Justice, concur.
JoNes, Judge, took no part in the decision of this case.